## In re VAN SCHAICK & CO.

### Appeal of LYON.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

### No. 13.

BANKRUPTCY ⟨⟩⟩188—RIGHTS OF CREDITOR—SUBROGATION TO LIEN.

A transaction by which bankrupts, who were brokers, loaned to another firm of brokers certain stocks, including some purchased for claimant, a customer, receiving as security a deposit of cash, *held* subject to the constitution and rules of the stock exchange of which both firms were members, which became part of the contract and required the borrowers, on the insolvency of bankrupts, to sell the stocks in the exchange, as they did, and gave them a lien on the proceeds of the membership of the insolvents when sold only for the unpaid balance due them, so that, since they realized a sufficient amount from the sale of the stocks to cover their deposit, they never became entitled to any lien on such proceeds to which claimant could be subrogated.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 270, 286–289, 291–295; Dec. Dig. ⟨⟩⟩188.]

Petition to Revise Order of and Appeal from the District Court of the United States for the Southern District of New York.

In the matter of Van Schaick & Co., a copartnership, bankrupts. On appeal by Samuel H. Lyon from an order denying him a lien. Affirmed.

The following is the report of referee as special master:

I, John J. Townsend, referee in charge of this case, have before me as special master to hear and determine and to report upon a claim made by Samuel H. Lyon, who was a customer of the bankrupt stockbroking firm of Van Schaick & Co., to have a lien upon the proceeds of a so-called seat in the New York Stock Exchange owned by the partner John B. Van Schaick which proceeds are now in the possession of the trustee in bankruptcy.

It is impossible for the special master to state more cogently and concisely the contentions of the claimant and the trustee in bankruptcy, than has been done in the briefs filed by the respective counsel.

The controversy arises out of a transaction occurring on the New York Stock Exchange prior to a general assignment for the benefit of creditors made by Van Schaick & Co. on September 11, 1911.

On September 7, 1911, Lyon, having an ample credit balance on the books of Van Schaick & Co., ordered that firm to purchase for him 100 shares of Union Pacific Common Stock which order was executed by the brokers.

The shares so purchased for the account of Lyon, with 100 other shares, through the machinery of the Stock Exchange Clearing House, were delivered and loaned by Van Schaick & Co. to the Stock Exchange firm of Potter, Choate & Prentice; the latter delivering or depositing with Van Schaick & Co. a check for a sum including the then value of Lyon's 100 shares of stock.

Upon the announcement of the suspension of Van Schaick & Co., Potter, Choate & Prentice sold 200 shares of Union Pacific common stock upon the Stock Exchange for the account of Van Schaick & Co. at a trifling higher price than the borrowing price and out of the proceeds retained the amount of money which they had deposited or paid to Van Schaick & Co. as security for the shares borrowed on September 7th and turned over to the assignee of Van Schaick & Co. the surplus proceeds of such sale.

In making such sale on the Stock Exchange, Potter, Choate & Prentice did not sell the identical certificates which had been received by them in borrow-

ing the stock from Messrs. Van Schaick & Co. on September 7th, but sold, out of their own resources, a certificate or certificates for a similar quantity of shares of the same stock, or, in other words, the shares Potter, Choate & Prentice would have been obliged under their contract to return to Van Schaick & Co. had the latter not suspended. I so find as a matter of fact.

It is not disputed that Potter, Choate & Prentice borrowed the shares from Van Schaick & Co. on September 7th, not to retain in their possession the identical certificate or certificates, but to use the certificates as they saw fit, but always under the obligation to return to Van Schaick & Co. other certificates for a similar quantity of the same stock.

This transaction between the two firms of brokers took place under the following articles of the constitution of the New York Stock Exchange, which must be regarded as part of the contract between the two firms of brokers:

### Article 15.   Transfer of Membership.

Section 1. A transfer of membership may be made upon submission of the name of the candidate to the committee on admissions, and the approval of the transfer by two-thirds of the entire committee. Notice of the proposed transfer shall be posted on the bulletin in the exchange for at least ten days prior to transfer.

Sec. 2. All contracts subject to the rules of the exchange made by a member proposing to transfer his membership, shall mature on the tenth day of the posting of the notice of the proposed transfer; and said member shall not be permitted, thereafter, to make any contracts subject to the rules of the exchange, pending the approval of the proposed transfer by the committee on admissions. This rule shall also apply in cases where a membership is disposed of by the committee on admissions.

Sec. 3. Upon any transfer of membership, whether made by a member voluntarily, or by the governing committee or the committee on admissions in pursuance of the provisions of the constitution, the proceeds thereof shall be applied to the following purposes and in the following order of priority, viz.: First. The payment of all fines, dues, assessments and charges of the exchange, or any department thereof, against a member whose membership is transferred. Second. The payment of creditors, members of the exchange, or firms registered thereon, of all filed claims arising from contracts subject to the rules of the exchange, if, and to the extent that, the same shall be allowed by the committee on admissions. If said proceeds shall be insufficient to pay said claims, as so allowed, in full, the same shall be applied to the payments thereof pro rata. Third. The surplus, if any, of said proceeds shall be paid to the person whose membership is transferred, or to his legal representatives, upon the execution by him or them of a release or releases satisfactory to the committee on admissions. The committee on admissions shall have power, by rule or otherwise, to secure the observance of the provisions of this article.

Sec. 4. All unmatured debts or other obligations of a member, arising out of contracts subject to the rules of the exchange shall become due and payable immediately prior to the transfer of his membership; and all claims filed with the committee on admissions, founded upon contracts subject to the rules of the exchange, shall, if, and to the extent that same are allowed by said committee, be liquidated, and paid, pro rata, out of the proceeds of said membership upon consummation of the transfer.

Sec. 5. A member shall forfeit all right to share in the proceeds of a membership unless he file a statement of his claim with the committee on admissions prior to the transfer of such membership; but such claim, as allowed by the committee on admissions, may be paid out of any surplus remaining after all other claims, allowed by said committee, have been paid in full.

Sec. 6. Claims growing out of transactions between partners, who are members of the exchange, shall not share in the proceeds of the membership of one of such partners, until after all other claims, as allowed by the committee on admissions, have been paid in full.

Sec. 7. When a member dies, his membership may be disposed of by the committee on admissions.

Sec. 8. When a member is expelled, or becomes ineligible for reinstatement, his membership may be disposed of forthwith by the committee on admissions.

Sec. 9. The expulsion or suspension of a member shall not affect the rights of creditors, members of the exchange or of firms registered thereon.

Sec. 10. When a member is in debt to another member, the death of the creditor member or the transfer of his membership, either by himself voluntarily, or by the governing committee, or the committee on admissions, shall not affect the rights of said creditor member, his firm, or estate, to share in the proceeds of the membership of the debtor member under this article, in the same manner and, to the same extent as if such creditor member had not died or his membership had not been transferred.

## Article 28. Closing Contracts "Under the Rule."

Section 1. When the insolvency of a member or firm is announced to the exchange, members having contracts subject to the rules of the exchange with the member or firm, shall without necessary delay proceed to close the same. If the contracts involved securities admitted to quotation upon the exchange the closing must be in the exchange, either officially by the chairman, or by personal purchase or sale. If the contracts involve securities not dealt in on the exchange, the purchase or sale of such securities must be promptly made in the best available market. Should a contract not be closed, as above provided, the price of settlement shall be fixed by the price current at the time when such contract should have been closed under this rule.

Sec. 2. A contract which has not been fulfilled according to the terms thereof may be officially closed "under the rule" by the chairman, as herein provided. Notice of intention to make such closing of a contract must be delivered, at or before 2:30 o'clock p. m. at the registered office address of the member or firm in default. And the chairman shall not close such contract before 2:35 o'clock p. m.

Sec. 3. Every notice of intention to close a contract "under the rule," because of nondelivery, shall be in writing; and shall state the name of the member or firm by whom the order is given, also for whose account—all of which shall be announced by the chairman before closing the contract. The closing of a contract "under the rule" made in conformity with such notice, shall be also for the account and liability of each succeeding party in interest.

Sec. 4. Notice of intention to close a contract "under the rule" may be given upon the entire amount in default or upon any portion thereof, but in this latter case for not less than one hundred shares of stock or ten thousand dollars of bonds.

Sec. 5. When notice that a contract will be closed "under the rule" is received too late for transmission to other members or firms interested in such contract, within the times stated therefor, the notified member or firm who is unable to so transmit said notice may, immediately after the official closing "under the rule," re-establish such contract by a new purchase or sale in the "regular way"; and any loss arising therefrom shall be a valid claim against the successive party or parties in interest.

Sec. 6. When a member has issued a notice of intention to close a contract "under the rule," for default in delivery, he must receive and pay for securities due upon such contract if tendered at his office within five minutes of the official time for closing; or thereafter, if tendered at the rostrum of the exchange, before the chairman has closed the contract.

Sec. 7. When a contract has been closed "under the rule" the member or firm who gave the order must give prompt notice of such closing to the member of firm in default. Notification to successive parties in interest must be transmitted without delay, and claims for damages, arising therefrom, must be made prior to 3 o'clock p. m. of the business day following the closing of the contract.

Sec. 8. When a contract has been closed "under the rule" the chairman shall indorse upon the order therefor the name of the purchaser or seller, the price and the hour at which such contract is closed, and deliver the order to the secretary of the exchange, who shall ascertain whether the money

difference, if any, has been paid. If such difference shall not be paid within twenty-four hours after the closing of the contract, the secretary shall report such default to the president.

Sec. 9. When a contract is closed "under the rule" any member or firm accepting the bid or offer, as made by the chairman, and not complying promptly therewith, shall be liable for any damages resulting therefrom. The member of firm, for whose account a contract is being closed "under the rule," shall not be permitted to accept the bid or offer made by the chairman.

Sec. 10. When a loan of money is not paid at or before 2:15 o'clock p. m. of the day upon which it becomes due, the borrower shall be considered as in default, and the lender may sell "under the rule" the securities pledged therefor, or so much therefor as may be necessary to liquidate the loan, in the manner prescribed in the foregoing sections of this article.

The referee will also find that the stock purchased by Van Schaick & Co. for Lyon has been identified, on the testimony, as included in the 200 shares delivered by Van Schaick & Co. to Potter, Choate & Prentice. See claimant's supplemental brief, pages 2 and 3.

The referee will also find, for present purposes, but without determining the question as a matter of fact should it hereafter become otherwise material, that, as against Van Schaick & Co. and the creditors of that firm, the claimant Lyon has paid in full for his 100 shares and as against Van Schaick & Co. was at all times entitled to the immediate possession of his securities, because of his abundant credit balance before referred to supra, p. 140.

It is claimed by Lyon that Potter, Choate & Prentice, in possession of his stock on September 7th, had two securities for their claim against Van Schaick & Co. for the moneys deposited with the latter firm on September 7th; (1) the stock in their possession which as between Lyon and Van Schaick & Co. belonged to Lyon, which Van Schaick & Co. had no right to lend to Potter, Choate & Prentice or the stock which the latter were bound to return in kind to Van Schaick & Co. in order to collect the amount of their deposit; and (2) a lien under article 15 of the constitution of the New York Stock Exchange upon the proceeds of the so-called seat or membership in the Stock Exchange owned by Van Schaick & Co. for the amount of their deposit with Van Schaick & Co. even had Potter, Choate & Prentice voluntarily returned the shares to the claimant Lyon as lawful owner, or had he repossessed himself of the same by legal process, if a legal process would lie in his favor against Potter, Choate & Prentice.

In parenthesis I may state that, while it is possible that Potter, Choate & Prentice might have voluntarily and at their own risk delivered the shares to the claimant Lyon on his demand, I cannot see how any legal process to compel such delivery would lie in favor of the claimant Lyon against Potter, Choate & Prentice except on a tender of the amount of money deposited with Van Schaick & Co. nor even then without making Van Schaick & Co. parties to the legal process.

It is the contention or theory of the claimant Lyon that Potter, Choate & Prentice, having the two alleged remedies above described, could or should have returned the stock to the claimant Lyon on demand or to the assignee for Lyon's account and have looked to the proceeds of the seat, under article 15 of the constitution of the New York Stock Exchange, for their claim, against Van Schaick & Co., for the amount of money deposited with the latter.

It is the further contention or theory of the claimant Lyon that, Potter, Choate & Prentice having in order to collect their claim against Van Schaick & Co., resorted to the sale of the shares which were the property of Lyon and his only security for his claim against the insolvent Van Schaick & Co., Lyon in equity is subrogated to the rights which Potter, Choate & Prentice might, he contends, have enforced under article 15 of the constitution of the Stock Exchange against the proceeds of the so-called seat or membership in the Stock Exchange now in the hands of the trustee in bankruptcy, which security was available only to Potter, Choate & Prentice and to which they did not resort for the collection of their claim against Van Schaick & Co. as in equity they were bound to do under the familiar rule that a creditor, hav-

ing two securities or remedies in one of which he alone is interested and in the other of which a second creditor has an interest, is bound to resort first to the security or remedy in which he alone is interested, and that where he fails to do so the second creditor is subrogated to the rights which the first creditor had in the security or remedy to which he has not but should have resorted and in which he alone was interested.

The trustee in bankruptcy does not dispute the rule of law or equity advanced by the claimant Lyon, but takes issue with the proposition that Potter, Choate & Prentice did have two securities or remedies for the collection of their claim against the firm of Van Schaick & Co. for the amount of the deposit.

The controversy is a novel one, and, so far as I am aware, has to be decided by me on impression and not on authority.

My conclusions are as follows:

I regard it as immaterial whether, in the transaction between Potter, Choate & Prentice and Van Schaick & Co., the former were obliged to retain in their possession and to return to Van Schaick & Co., in order to collect their deposit the identical certificate or certificates delivered on September 7th, or whether Potter, Choate & Prentice might use such certificate or certificates and were only obligated to return certificates for a similar quantity of the same stock.

In either alternative, I am of the opinion that Potter, Choate & Prentice · had in the transaction only one remedy or security for the collection of their claim against Van Schaick & Co., to wit, the one provided by articles 28 and 15 of the constitution of the New York Stock Exchange.

I have already held that these two articles constituted an integral part of the contract between two firms of brokers.

The claimant Lyon in dealing with Van Schaick & Co. and in trusting them with the possession of his negotiable securities took the risk of their solvency and of any use they might make of his property.

So far as Potter, Choate & Prentice and Van Schaick & Co. are concerned, it was perfectly competent for the two firms to enter into the transaction and to make the contract that they did make, a part of which was article 28 of the constitution of the Stock Exchange.

Potter, Choate & Prentice were bound to liquidate that contract according to its tenor, viz., by selling the certificates, or like certificates, on the floor of the exchange.

Such a sale is meant by the words "close the same" as used in article 28. I do not think that the clause in article 28 beginning, "Should a contract not be closed as above provided," etc., in any way relieves Potter, Choate & Prentice from resort to such a sale or authorized them to surrender the shares to a third person. As far as Potter, Choate & Prentice were concerned, Van Schaick & Co. were the owners of the stock in question, and it would be entirely at the peril of Potter, Choate & Prentice if they recognized any claim by Lyon to ownership in the stock.

Under this view of the contract, I am of the opinion that Potter, Choate & Prentice resorted to the only security or remedy open to them, and that the sale made by them was incumbent upon them under article 28 in order to establish any claim under article 15 upon the proceeds of the seat in case the sale failed to realize the amount of the deposit.

Taking, however, the view maintained by the claimant Lyon that there should or might have been a voluntary or enforced surrender of the stock by Potter, Choate & Prentice to him or to the assignee for his account, and without a tender of the amount of his deposit, I am of the opinion that such surrender imports a negation of any security or remedy of Potter, Choate & Prentice in connection with the stock and would be equivalent to a declaration by all parties, and that the only security or remedy of Potter, Choate & Prentice in the premises against Van Schaick & Co. for the amount of the deposit would be their lien under article 15 of the constitution of the Stock Exchange. Once the title of Lyon to the shares had been asserted and recognized in such surrender the claim of Potter, Choate & Prentice against Van Schaick & Co. ceases to arise under the original contract for the borrowing

of the stock against a deposit of its value, but arises under the implied contract to return money obtained without consideration, viz., in his case obtained on the loan of stock to which Van Schaick & Co. had no title and which had been restored to the lawful owner by Potter, Choate & Prentice.

I repeat, however, that I cannot conceive of such a surrender, voluntary or enforced, without a tender to Potter, Choate & Prentice of the amount of their claim against Van Schaick & Co., and, of course, in the case of such a surrender, with a tender, no such controversy as the present would arise.

Every point of view therefore leads me to my original conclusion that Potter, Choate & Prentice had open to them only one security or remedy, to wit, the one to which they resorted and that a voluntary or enforced surrender by them of the stock to Lyon or to the assignee for his account would have been a negation of any security or remedy in their favor in connection with the stock because such surrender would have been a declaration of an adjudication that they had no right to the stock. In other words, once admitting that Potter, Choate & Prentice had a right to the stock, it follows that they were in duty bound to sell it under their contract with Van Schaick & Co. under article 28 of the constitution of the Stock Exchange before they could assert any claim under article 15 of that constitution.

I report, accordingly, that the trustee in bankruptcy is entitled to a decree adjudging that the claimant Samuel H. Lyon is not entitled to any lien upon the proceeds of the so-called seat or membership in the New York Stock Exchange belonging to the bankrupt John Van Schaick now in the possession of the trustee in bankruptcy.

Solely for the convenience of the court, but in no sense as a part of the record in this proceeding, the special master files in the office of the clerk of this court the briefs referred to by him at the outset of this report.

Joseph M. Gazzam, of New York City, and Semmes, Bowen & Semmes, of Baltimore, Md., for appellant Lyon.

Robert Forsyth Little and B. W. B. Brown, both of New York City, for appellee Robinson.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. Order affirmed on opinion of the referee.

---

BADDERS CLOTHING CO. v. BURNHAM–MUNGER–ROOT DRY GOODS CO. et al. (two cases).*

BADDERS CLOTHING CO. et al. v. SAME.

(Circuit Court of Appeals, Eighth Circuit. December 3, 1915.)

Nos. 4292, 4293, 139.

1. JURY ☞103—CHALLENGES FOR CAUSE—PERSONAL OPINIONS.

Where a juror on his examination stated that he would act on his own judgment of the value of real property, but in reply to the court said he would take the evidence of the witnesses as to the facts, the overruling of a challenge for cause was not error.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 444, 456, 460–479, 497; Dec. Dig. ☞103.]

2. BANKRUPTCY ☞63—CORPORATION—ACTS OF BANKRUPTCY—ACTS ULTRA VIRES.

It is no defense to a proceeding in bankruptcy against a corporation that the act of bankruptcy charged was not within its charter powers.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞63.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied March 27, 1916.